IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **GEORGANNE K. DAUBENMIRE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | Case No. 2:21-cv-03910 |
| v. | : | |
| | : | Chief Judge Algenon L. Marbley |
| **COLUMBIA GAS TRANSMISSION, LLC,** | : | |
| | : | Magistrate Judge Deavers |
| **Defendant.** | : | |

**OPINION & ORDER**

This matter is before the Court on the Defendant/Counterclaimant Columbia Gas Transmission LLC's ("Columbia") Motion for an Order of Condemnation (ECF No. 14). For the reasons set forth below, the Court **GRANTS** Defendant's/Counterclaimant's Motion (*Id.*).

**I.  BACKGROUND**

**A.  Columbia Gas Transmission LLC**

Columbia is a Delaware limited liability company that owns and operates one of the largest underground natural gas storage and transmission systems in North America. (ECF No. 14–2 at 2, Decl. of James Scott ¶ 4). Columbia's system transports, on average, three billion cubic feet of natural gas per day through its network of almost 12,000 miles of pipeline and 103 compressor stations in ten states. (*Id.*). Moreover, Columbia has—either itself or through its predecessors in interest—operated an element of its pipeline system in Fairfield County, Ohio since 1945. (ECF No. 7 at 4). Columbia uses this element—the Crawford Compressor Station—to pressurize natural gas to facilitate its transportation via Columbia's interstate pipeline system and through its Underground Natural Gas Storage Facilities. (*Id.*).

Georganne Daubenmire owns two parcels of land in Lancaster, Ohio located at 6085 Old Logan Road ("Parcel A") and 0 Pump Station Road ("Parcel B"). (ECF No. 4, ¶¶ 3–6). After

1

initially acquiring both Parcel A and B in 1985 (Ohio Warranty Deed, *id.* at 15), Ms. Daubenmire and her husband transferred Parcel A to themselves via General Warranty Deed in early 1992 (General Warranty Deed, *id.* at 13).  Following her husband's death in 2005, Daubenmire acquired an undivided interest in Parcel B via Certificate of Transfer in 2006.  (*Id.* at 21).

Columbia has constructed, operated, and maintained the Crawford Compressor Station and related facilities on Daubenmire's properties through a series of negotiated instruments with either Daubenmire or her predecessors-in-interest.  These instruments include a 1926 Pipeline Right of Way; a 1957 Pipeline Right of Way; a 1971 Oil, Gas, and Storage Lease; a 2006 Launcher/Receiver Right of Way Agreement; and a 2017 Pipeline Right of Way.  (ECF No. 14–2 at 4; ECF No. 7 ¶ 8).  These transactions have, in part, authorized Columbia to construct, operate, and maintain pipelines and related facilities on, over, through, and under the Daubenmire property.

### B.  Statutory and Regulatory Framework for Natural Gas Pipelines

This pipeline has been operating for the better part of a century and, in one way or another, has touched all three branches of the federal government.  Begin with the legislative branch.  "In 1938, Congress passed the Natural Gas Act ("NGA"), ch. 556, 52 Stat. 821, to regulate the transportation and sale of natural gas in interstate commerce. Congress vested the Federal Power Commission (now the Federal Energy Regulatory Commission) with the authority to administer the NGA, including" the power to determine the public necessity for development of natural gas pipelines.  *PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2252 (2021); 42 U.S.C. § 7172.   Under the Natural Gas Act, entities proposing to construct a pipeline must obtain a certificate of public convenience and necessity from FERC—known as a "FERC Certificate."  15 U.S.C. § 717f(c); *ANR Pipeline Co. v. Schneidewind*, 801 F.2d 228, 234 (6th Cir. 1986).

The executive branch controls issuance of certificates through "extensive regulations" that FERC has promulgated.  *ANR Pipeline Co.*, 801 F.2d at 235.  The process begins with an

2

application from the gas company that includes: "(1) a description of the proposed pipeline project, (2) a statement of the facts showing why the project is required, and (3) the estimated beginning and completion date for the project." *E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 818 (4th Cir. 2004) (citing 15 U.S.C. § 717f(d) and 18 C.F.R. § 157.6(b)) (describing the construction phase of the life of a proposed pipeline project). FERC files notice of the application in the Federal Register, 15 U.S.C. § 157.9; public comment and protest are allowed, *id.* § 157.10; and FERC conducts a public hearing on the application, *id.* § 157.11. As part of this evaluation, FERC must investigate the environmental consequences of the proposal and issue an environmental impact statement. *See* 42 U.S.C. § 4332; 18 C.F.R. § 157.9(b). At the end of the process, FERC will issue a certificate if it finds that the proposed pipeline "is or will be required by the present or future public convenience and necessity." 15 U.S.C. § 717f(e). The FERC Certificate specifies a date for the completion of construction and the start of service. 18 C.F.R. § 157.20(b). Finally, "[n]o natural-gas company … upon completion of any proposed construction or extension shall engage in the transportation or sale of natural gas, …unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations…." 15 U.S.C. § 717f(c).

Once FERC has issued a certificate, the Natural Gas Act empowers the gas company to exercise "the right of eminent domain" over any lands needed for construction, operation, or maintenance of the pipeline. 15 U.S.C. § 717f(h). Under that provision, certificate holders may acquire both "the necessary right-of-way" as well as "the necessary land" to construct and maintain the pipeline. *Id.* Any "aggrieved" party—including environmental groups and affected landowners—who intervened in the application process may seek a rehearing from FERC challenging the certificate or the conditions it imposes. *Id.* § 717r(a). Upon such application,

3

FERC may "grant or deny rehearing" or "abrogate or modify" the certificate "without further hearing." *Id.*

The judicial branch then plays a role at two stages of the certification process. *First*, aggrieved parties may seek review of a FERC Certificate "in the [federal] court of appeals ... for any circuit wherein the natural-gas company ... is located or has its principle place of business, or in the United States Court of Appeals for the District of Columbia." *Id.* § 717r(b). The court of appeals may "affirm, modify, or set aside" the certificate "in whole or in part." *Id.*

*Second*, once the gas company has obtained a FERC Certificate, it may file a complaint for eminent domain of the relevant property—or a "condemnation action"—"in the [federal] district court ... in which such property may be located." *Id.* § 717f(h). Federal Rule of Civil Procedure 71.1 governs such condemnation actions. A district court's role remains limited to "mere enforcement" in a FERC condemnation action. *Guardian Pipeline LLC v. 529.42 Acres of Land*, 210 F. Supp. 2d 971, 974 (N.D. Ill. 2002). That is, aggrieved parties may not "collaterally attack" the "validity and conditions of the FERC Certificate" during a condemnation action in district court. *Id.* Rather, "[r]eview of the validity of the certificate is the exclusive province of the appropriate court of appeals." *Id.* (citing *Williams Natural Gas Co. v. Oklahoma City*, 890 F.2d 255, 262 (10th Cir. 1989)).

### C. Columbia Obtains a FERC Certificate for the Crawford Compressor Station

Columbia applied for a FERC Certificate on November 9, 1982. *See* 22 FERC ¶ 62029 (1983) (ECF No. 7–2 at 2). After its analysis and review, FERC issued a blanket certificate of public convenience and necessity authorizing Columbia to operate, *inter alia*, its pipeline on January 7, 1983. *Id.* Notably, FERC issued the certificate in the absence of "petitions to intervene,

4

notices of intervention, or protests to the granting of the application" following "due notice by publication." *Id.* After extensive fact-finding, FERC concluded as follows:

> (1) [Columbia] is able and willing properly to do the acts and to perform the service proposed and to conform to the provisions of the Natural Gas Act and the requirements, rules and regulations of the Commission thereunder.
>
> (2) The construction, acquisition, and operation of facilities and the transportation and sale of natural gas are required by the public convenience necessity and a certificate therefor should be issued….

22 F.E.R.C. ¶ 62029.

### D. Despite Negotiations, Columbia Has Been Unsuccessful in Acquiring the Necessary Property Rights

In addition to encumbrances that existed at the time Daubenmire acquired her property, she has contracted with Columbia twice in the last sixteen years granting additional easements. The first time—in June of 2006—she entered into an Agreement entitled "Launcher/Receiver Right of Way Agreement." (ECF No. 4 at 33). This agreement granted Columbia the "right to erect, maintain, operate, and … remove a Pig Launcher and/or Receiver," a device used "in connection with transporting and distributing gas and/or any other similar substance or substances" on Parcel B. (*Id.*). The parties entered a second agreement entitled "Ohio Right-of-Way Agreement" in 2017.

The 2017 agreement, much like the first, purports to grant Columbia a right of way on Daubenmire's land: parcel # 0040118840. (*Id.* at 35). Unlike the first agreement that involved the servicing of a Pig Launcher/Receiver, this agreement embraces work involved with "a

pipeline" and "an underground communications system" each with appurtenant facilities. (*Id.*). Moreover, Daubenmire granted Columbia temporary and permanent rights-of-way.

After the 2006 agreement was entered, Columbia installed the Pig Launcher/Receiver Facility that same year. (ECF No. 14-2 ¶ 21). Approximately fourteen years later, Daubenmire, for the first time, expressed concern about the location of the Pig Launcher/Receiver Facility. (*Id.* ¶ 22–23). Specifically, she asserted that Columbia built the Facility on the wrong parcel. (*Id.* ¶ 23). After Daubenmire raised this matter with Columbia, Columbia sought an appraisal of the land at issue. (*Id.*).

The appraisal concluded that the fair market value of the land in fee interest amounted to $21,000. (*Id.*). Columbia offered to purchase the land from Daubenmire at $25,000—an amount that exceeded the appraised fair market value. (*Id.*). Daubenmire rejected Columbia's offer and insisted Columbia purchase all of her property—approximately 20 acres, including the parcel at issue—for $900,000. (*Id.* ¶ 24). This marked the end of negotiations.

### E. Daubenmire Files Suit, Rover Initiates Condemnation Action

After negotiations broke down, Daubenmire filed suit in 2021. Daubenmire filed her Complaint against Columbia in the Fairfield County Court of Common Pleas on June 11, 2021 (ECF No. 4 at 2). There, Daubenmire asserted six claims for relief under state law: (1) Declaratory Judgment; (2) Breach of the 2006 Contract; (3) Breach of the 2017 Contract; (4) Slander of Title; (5) Continuing Trespass; and (6) Ejectment. (*See id.* at 7–11). On July 9, 2021, Columbia filed its Notice of Removal in this Court. (ECF No. 1).

Shortly thereafter, Columbia timely filed its Answer and Counterclaim. (ECF No. 7). There, Columbia asserted two counterclaims: (1) Condemnation and (2) Easement by Equitable Estoppel. (*Id.* at 12, 16). Plaintiff/Counterclaim Defendant timely filed her Answer (ECF No. 9).

Pursuant to its Counterclaim, Columbia filed a Motion for an Order of Condemnation. (ECF No. 14). Plaintiff timely filed her Response, (ECF No. 16), and Defendant timely filed its Reply (ECF No. 17). This matter is now ripe for review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 71.1 governs federal condemnation actions. Fed. R. Civ. P. 71.1. That rule requires the party seeking a condemnation order to file a complaint with a short, plain statement outlining the following: (1) the authority for the taking; (2) the use for which the property is to be taken; (3) a description sufficient to identify the property; (4) the interest to be acquired; and (5) for each piece of property, a designation of each defendant who has been joined as an owner or owner of an interest in it. Fed. R. Civ. P. 71.1(c)(2). The Rule further requires the complainant to serve notice of the action, identify the requirements for answering the complaint, and the consequences for failing to file an answer. Fed. R. Civ. P. 71.1(c)(4), (d)(2)-(3).

Additionally, "[t]he district court holds a bench trial on the compensation issue unless: (1) a federal statute requires a different tribunal, or (2) a defendant demands a jury trial." Fed. R. Civ. P. 71.1(h)(1). *EQT Gathering, LLC v. A Tract of Prop. Situated in Knott Cnty., Ky.*, No. CIV.A. 12-58-ART, 2012 WL 6049691, at *1 (E.D. Ky. Dec. 5, 2012) (discussing the allocation of authority in a condemnation action, including the use of commissions as an alternative to juries). Because the Natural Gas Act does not contain a tribunal provision, the Court will try the compensation issue unless a party has demanded a jury. *See Rockies Exp. Pipeline, LLC v. 4.895 Acres of Land*, No. 2:08-CV-554, 2008 WL 5050644, at *1 (S.D. Ohio Nov. 20, 2008).

Finally, this Court has jurisdiction under the Natural Gas Act when the property at issue exceeds $3,000. *Nelson v. Columbia Gas Tansmission* [sic], *LLC*, No. 2:17-CV-90 (WOB-CJS), 2018 WL 8514054, at *1 (E.D. Ky. Nov. 29, 2018) (citing 15 U.S.C. § 717f(h)).

7

### III. LAW & ANALYSIS

Defendant/Counterclaimant moves for an order authorizing it to condemn the property interests of Plaintiff/Counterclaim Defendant in a parcel that is more or less 2.08 acres. (ECF No. 14-1 at 2). Columbia avers that because it has the substantive right to condemn the parcel in question pursuant to 15 U.S.C. § 717f(h) and it has complied with the applicable requirements of Rule 71.1, it is entitled to such an order. (*Id.*). Plaintiff argues that the Counterclaimant not only lacks a substantive right, but even if it had one, it failed to follow the necessary steps under Rule 71.1. (ECF No. 16 at 2). Moreover, Plaintiff asserts, absent authority, that her claims should be resolved first because a favorable ruling for her would obviate the need for the Court to address Columbia's Motion to Condemn. (*Id.* at 7). The Court will deal with these arguments in turn.

### A. Substantive Right

Under the Natural Gas Act, a natural gas company possesses a substantive right of condemnation where: "(1) the company holds a FERC Certificate authorizing a particular pipeline project, (2) the use of the land to be taken is necessary to the project, and (3) the company and the relevant property owners have failed to agree on a price for the property." *Mass. Bay Transp. Auth.*, 2 F. Supp. 2d at 108 (citing 15 U.S.C. § 717f(h)); *Tex. E. Transmission, LP v. 3.2 Acres Permanent Easement*, No. 2:14-cv-2650, 2015 WL 152680, at *3 (S.D. Ohio Jan. 12, 2015) (same). The Court has jurisdiction to resolve this question because the property rights at issue are purported to exceed $3,000. (ECF No. 14-2 ¶ 25).

#### 1. Certificate of Public Convenience and Necessity

As a threshold matter, Columbia asserts—and Daubenmire does not dispute—that it holds a certificate of public convenience and necessity from FERC. (ECF No. 14-1 at 10) (citing 22 F.E.R.C. ¶ 62029 (1983) and James Scott Decl., ECF No. 14-2, Ex. A ¶ 8); (ECF No. 16 at 6) ("It

8

is not contested that Columbia holds a certificate of public convenience and necessity as outlined in Columbia's Motion.").

Indeed, 22 F.E.R.C. ¶ 62029 shows that Columbia applied for and was issued "a blanket certificate of public convenience and necessity authorizing certain routine activities" including "[t]he construction, acquisition, and operation of facilities and the transportation and sale of natural gas." 22 FERC ¶ 62,029, 63,052–53 (1983). Thus, for purposes of establishing a substantive right, the first element is satisfied.

### 2. Inability to Acquire Property by Contract

Columbia also argues that it has been unable to acquire the necessary land rights by contract or agree with Daubenmire regarding consideration for her land. Relying on several cases including *Hardy Storage Co. v. Prop. Interests Necessary to Conduct Gas Storage Operations in Oriskany Subterranean Geological Formation Beneath,* Columbia contends that the refusal of an offer to purchase the land rights satisfies this prerequisite. (ECF No. 14-1 at 11) (collecting cases including No. Civ. A. 2:07CV5, 2009 WL 689054, at *5 (N.D.W. Va. Mar 9, 2009)). Columbia avers that because it made Daubenmire an offer for the fee simple interest in her land, Daubenmire then rejected that offer, and, in any event, the parties could not agree on the issue of purchase price, it is unable to acquire the property rights by contract. (*Id.* at 12). Accordingly, Columbia claims this element is satisfied.

Daubenmire resists this conclusion. She contends that Columbia's assertion is belied by the existing agreements with Daubenmire concerning a significant portion of the land it now seeks to condemn. (ECF No. 16 at 7–8). Indeed, Daubenmire maintains, the agreements covering most of the land at issue are not in dispute and are functioning as contemplated. (*Id.* at 8). According to Daubenmire, her Complaint concerns the 0.22 acres of land encompassed by the 2006 and 2017 agreements—a fraction of the parcel Columbia seeks to condemn. (*Id.*). Thus, while she appears

9

to concede that the parties have had issues contracting for the 0.22 acres of land identified in her underlying Complaint, she disputes Columbia's inability to contract for the remainder of the land. (*See id.*). To the extent the remaining portion of the parcel is considered uneconomic, Daubenmire also asserts that condemning the entire parcel here would be inappropriate. (*Id.* at 9–10). Hence, Daubenmire attacks the scope of Columbia's request: she maintains that the entire parcel should not be at issue, instead condemnation should be limited to the 0.22 acres the parties are fighting over. Finally, Daubenmire, absent authority, insists that Columbia's condemnation action runs counter to the spirit of 15 U.S.C. § 717f(h). (*Id.* at 8).

Beginning with the statute, the Natural Gas Act provides that "when a FERC-Certificate holder like [Columbia] 'cannot acquire by contract, or is unable to agree with the owner to the compensation to be paid,' the holder 'may acquire the same by the exercise of the right of eminent domain.'" *Rover Pipeline LLC v. Kanzigg*, No. 2:17-CV-105, 2017 WL 5448425, at *4 (S.D. Ohio Mar. 1, 2017) (Marbley, J.) (quoting 15 U.S.C. § 717f(h)). The plain language of the statute instructs that an inability to acquire "the necessary right-of-way" or "the necessary land or other property, in addition to right-of-way" by contract is all that is required to satisfy this element of the judicially created corresponding test. *See* 15 U.S.C. § 717f(h). The same is true if the certificate holder cannot agree "with the owner of property to the compensation to be paid for[]" such property rights. *Id.* § 717f(h).

And though some courts have imposed a duty on the certificate holder to engage in good-faith negotiations with the landowner, many others have found that the statute does not impose such a requirement. *See USG Pipeline Co. v. 1.74 Acres in Marion Cnty.*, Tenn., 1 F. Supp. 2d 816, 824 (E.D. Tenn. 1998) (requiring good-faith negotiations). *But see e.g., Alliance Pipeline L.P. v. 4.360 Acres of Land*, 746 F.3d 362, 367–68 (8th Cir. 2014) (good-faith negotiations not

10

required); *Maritimes & Ne. Pipeline, LLC v. Decoulos*, 146 F. App'x 495, 498 (1st Cir. 2005) (same); *Guardian Pipeline, LLC v. 295.49 Acres of Land, Nos. 08–C–0028, 08–C–54, 08–C–29, 08–C–30*, 2008 WL 1751358, at *14–15 (E.D. Wis. Apr. 11, 2008) (collecting cases) (same); *Columbia Gas Transmission., LLC v. Booth,* No. 1:16-CV-1418, 2016 WL 7439348, *4 (N.D. Ohio Dec. 22, 2016) (same). Thus, if good-faith negotiations are not required, this supports the view that gas companies must only extend *an offer* concerning the property rights at issue to answer the question of whether the parties are able to contract.

The Court need not decide the precise role of good-faith negotiations because Daubenmire argues that Columbia does not require the property interests it seeks to comply with its FERC Certificate. This argument—though at first blush, conceptually appealing—is non-responsive. As discussed more fully below, necessity is a distinct inquiry dealt with under the third prong of the substantive right assessment. Thus, for purposes of answering the separate question of whether Columbia was able to contract for the rights it now seeks to condemn, the Court does not yet ask if those same rights are necessary. *See Rover Pipeline LLC v. Kanzigg*, No. 2:17-CV-105, 2017 WL 5448425, at *5 (S.D. Ohio Mar. 1, 2017) (analyzing the question of necessity separately from the parties' ability to contract); *Texas E. Transmission, LP v. 3.2 Acres Permanent Easement*, No. 2:14-CV-2650, 2015 WL 152680, at *3 (S.D. Ohio Jan. 12, 2015) (citing 15 U.S.C. § 717f(h)) (same); *Tennessee Gas Pipeline Co. v. Massachusetts Bay Transp. Auth.*, 2 F. Supp. 2d 106, 108 (D. Mass. 1998) (same). By setting aside the question of necessity and simply asking whether the parties were able to contract for the property rights Columbia now seeks to condemn, even considering the operation of existing agreements, the answer is an unequivocal and uncontroverted no.

That is because the property rights sought by Columbia in this condemnation action are different than the property rights in which the parties once agreed. Here, Columbia seeks to obtain a fee-simple interest in the parcel. (Decl. of Scott, ECF No. 14-2 at 6, ¶¶ 17–18). Each of the existing agreements—some of which Daubenmire points to as evidence that the parties are able to contract under the NGA—only pertain to temporary and permanent easements. (*See* ECF No. 4 at 33). Thus, the apparent paradox caused by the parties existing agreements and the question of whether the parties were able to contract dissipates when the proper inquiry is performed.

Accordingly, whether the parties were able to contract in the past as a general matter, does not answer the statutory question of whether the parties are able to contract concerning the specific rights at issue. Having identified the relevant question, Daubenmire and Columbia are unable to contract or agree on the compensation for the fee-simple interest of such parcel. After appraising the property, Columbia offered Daubenmire $25,000—a figure above the appraised amount of $21,000 for her fee-simple interest in the parcel. (ECF No. 14-2 ¶ 23). She rejected that offer, countering that Columbia should buy all of her property in the area for $900,000. (*Id.* ¶ 24). The negotiations stalled and Daubenmire filed suit in state Court. (ECF No. 4 at 2). Thus, for purposes of establishing a substantive right, the second element is satisfied.

### 3. *Use of Property Necessary to Comply with FERC Certificate*

Columbia asserts that the condemnation of Daubenmire's fee simple interest in her parcel is necessary for it to operate the Crawford Compressor Station as well as its larger interstate pipeline system—each activity being within the scope of its FERC certificate. (Decl. of Scott, ECF No. 14-2 ¶¶ 17–18). To support this conclusion, Columbia offers the sworn testimony of a company representative, observing that essential elements of its Crawford Compressor Station are already operational on the Daubenmire parcel. (*Id.* ¶ 19). Moreover, rather than limit its taking to a portion of the parcel that is otherwise entirely surrounded by a remaining portion, Columbia

12

asserts that it is more fair and equitable to condemn the entire parcel and duly compensate Daubenmire. (ECF No. 14-1 at 8). If Columbia just took the 0.22 acres that included its facility, Columbia avers that its use of the remainder along with its partial taking would likely render the remainder economically unviable. (*Id.*).

Daubenmire, for her part, does not offer any evidence contesting this requirement; instead, she attempts to undermine the weight of Columbia's offered testimony. She asserts that the Pipeline Map provided by Columbia in its opening brief shows that it has all the rights it needs. (ECF No. 16 at 10). Put differently, Daubenmire contests the necessity of Columbia attaining a fee-simple interest in the property where it already has easements. (*Id.* at 9). Further, Daubenmire argues that this request by Columbia is an overreach, but concedes that "it might not reach the level of being considered arbitrary or abusive." (*Id.* at 10–11).

The Natural Gas Act empowers FERC-certificate holders to obtain "the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines." 15 U.S.C. § 717(f)(h). Courts will not question the issue of necessity, unless "there is evidence that the power to condemn has been wielded arbitrarily, abusively, or in bad faith." *Columbia Gas Transmission Corp. v. An Exclusive Nat. Gas Storage Easement in Clinton Subterranean Geological Formation Beneath An 80 Acre Tract in Ripely Twp., Holmes Cnty.*, Ohio, 688 F. Supp. 1245, 1249 (N.D. Ohio 1988) (citing *United States v. 58.16 Acres of Land*, 478 F.2d 1055 (7th Cir. 1973)). The burden is on landowners challenging the taking to produce such evidence. *See id.*

Columbia has adduced "uncontested evidence that the property interests it seeks are necessary to [operate and maintain] the pipeline pursuant to the FERC certificate." *Texas E.*

13

*Transmission, LP v. 3.2 Acres Permanent Easement*, No. 2:14-CV-2650, 2015 WL 152680, at *3 (S.D. Ohio Jan. 12, 2015) (holding that the gas company demonstrated necessity by proffering the sworn testimony of company representatives). Indeed, Columbia has offered the sworn testimony of company representative James Scott stating that the parcel in question houses Columbia's "Launcher/Receiver Facility, the Leach Tie-in, and various pipelines with associated fifty-foot wide protected corridors." (ECF No. 14 at 16) (citing Scott Decl. ¶ 12–15). These components are essential "parts of the Crawford Compressor Station and Columbia's pipeline system," both of which are contemplated by the FERC certificate. (*Id.*) (citing Scott Decl. ¶ 19).

Though Daubenmire points to existing agreements as a counterweight to Columbia's necessity argument, she does not offer any evidence—nor even argue—that Columbia is acting "arbitrarily, abusively, or in bad faith." (*See* ECF No. 16 at 10–11). This is true despite Daubenmire conceding the proposition of law about when Courts question a condemnor's assertions about necessity. (*See id.*) (citing *Columbia Gas Transm. Corp. v. Exclusive Natural Gas Storage Easement etc.*, 688 F. Supp. 1245, 1249 (N.D. Ohio 1988) ("While courts do not generally question the necessity of a taking in this setting, it is not entirely outside of their purview to do so when a condemnor has acted arbitrarily, abusively, or in bad faith.").

Consistent with the parties' articulation of the law, this Court has identified no other exceptions to the general rule other than the arbitrary, abusive, or bad faith test. Thus, despite Daubenmire's protestations, she has not and apparently cannot, adduce evidence warranting a different finding on the issue of necessity. Accordingly, this Court finds the third requirement satisfied.

### B. Rule 71.1

Even if a gas company has a substantive right to condemn the property interests at issue, it still must comply with the procedural safeguards outlined in Federal Rule of Civil Procedure 71.1.

*See Tex. E. Transmission*, 2015 WL 152680, at *4. It is not disputed that Columbia has complied with *almost* all of these requirements. ("While Columbia complied with subsection A of the Rule, it failed to comply with subsection B. More specifically, Columbia failed to list an address within this district.") (ECF No. 16 at 11). Columbia included a short, plain statement of the required allegations from Rule 71.1(c) in its Answer and Counterclaim. (*See* ECF No. 7). And Columbia included the required notifications from Rule 71.1(d)(2) in the Notice that the company electronically filed regarding the property. (*See* ECF No. 8, Notice of Condemnation).

Yet, Daubenmire asserts that Columbia did not comply with 71.1(d)(2)(B). That provision states that "[t]he notice must conclude with the name, telephone number, and e-mail address of the plaintiff's attorney and an address within the district in which the action is brought where the attorney may be served." Fed. R. Civ. P. 71.1(d)(2)(B). Although Daubenmire concedes that Columbia complied with most of the foregoing requirements, she argues that Columbia did not provide "an address within the district in which the action is brought where the attorney may be served." (ECF No. 16 at 6) (quoting Fed. R. Civ. P. 71.1(d)(2)(B)). Instead, Columbia provided an address in the Northern District rather than the Southern District of Ohio where the Complaint was filed. (*See* ECF No. 7).

Columbia does not dispute this misstep. Instead, it argues that Daubenmire failed to raise this defense in her answer and that her proffered proposition of law is without authority. (ECF No. 17 at 10).

Rule 71.1.(e)(2) requires that "a defendant that has an objection or defense to the taking must serve an answer within 21 days after being served with the notice." Fed. R. Civ. P. 71.1(e)(2). Further, the answer must "state all the defendant's objections and defenses to the taking." Fed. R. Civ. P. 71.1(e)(2)(C). Rule 71.1(e)(3) also provides that "[a] defendant waives all objections and

15

defense not stated in its answer. No other pleading or motion asserting an additional objection or defense is allowed." Fed. R. Civ. P. 71.1(e)(2)(3).

Because Daubenmire did not raise this defense in her Answer, it is waived. (*See* ECF No. 9). Moreover, the fact that she attempted to raise this defense in her response in opposition makes no difference. (*See* ECF No. 16 at 11–12). That is because "[n]o other pleading or motion asserting an additional objection or defense is allowed." Fed. R. Civ. P. 71.1(e)(2)(3). As such, the plain language of Rule 71.1.(e)(3) requires this defense to be rejected outright. *See* Fed. R. Civ. P. 71.1(e)(3). And although 71.1(d)(2) requires that the content of the notice include "an address within the district in which the action is brought where the attorney may be served," Daubenmire's initiation of this case facilitated service of her answer to Columbia's Counterclaim. Thus, concerns about her being able to serve easily Columbia's counsel are mitigated because of the posture of the case. Accordingly, the concerns ordinarily attendant to the omission of such an address are wholly mitigated. As such, Columbia has materially complied with Rule 71.1.

## IV.  CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant/Counterclaimant's Motion for Condemnation. The Court therefore **ORDERS** as follows:

1. Pursuant to the Natural Gas Act, Columbia—as the holder of a valid certificate of public convenience and necessity issued by FERC—has the substantive right to condemn the fee-simple interest needed for the operation and maintenances of the Crawford Compressor Station, as identified in Exhibit 9 to the Answer and Counterclaim, for the parcel of land listed separately in Appendix 1 to this Order.

2. Because no party has demanded a jury under Rule 71.1(h)(1)(B), the issue of just compensation will be tried by the Court.

3. The parties meet and confer to propose to the Court an appropriate litigation schedule and method to resolve the compensation issues.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: July 14, 2022**

# APPENDIX 1

Situated in the State of Ohio, Fairfield County, Berne Township, Township 13, Range 18, Section 4. Being part of the tracts described in Deeds to Kenneth L. Daubenmire and Georganne K. Daubenmire as recorded in volume 537, page 357, and volume 512, page 455, and being more fully described as follows:

Beginning at a railroad spike found in Pump Station Road and at the southwest corner of a tract described in a deed to Columbia Gas Transmission Corporation as recorded in volume 292, page 660, said point being South 74° 36' 16" West a distance of 498.97 feet from a PK nail set in the intersection of Pump Station Road and Old Logan Road; thence with the centerline of Pump Station Road South 58° 52' 49" West a distance of 132.06 feet to a railroad spike set; thence continuing with said centerline South 48° 58' 25" West a distance of 19.37 feet to a point; thence North 22° 47' 53" West, passing a 5/8 inch rebar set at 32.41 feet, a distance of 409.54 feet to a 5/8 inch rebar set; thence North 62° 19' 32" East a distance of 305.74 feet to a 3 inch steel post found; thence South 02° 02' 15" East, passing a 3 inch steel post found at 422.64 feet a distance of 438.85 feet to the point of beginning, containing 2.084 acres.
Bearings are based on a previous survey recorded in book 25, page 8483. Rebars set are 5/8 inch by 36 inches and have a yellow plastic identification cap stamped "Tobin-McFarland". For additional information see plat of survey made in conjunction with and considered an integral part of this description.

Description is based on a survey made by Tobin-McFarland Surveying, Inc. in December[] 1991 and was prepared by Thomas E. Tobin, Registered Professional Surveyor No. 6363.

This Parcel shall not be utilized as a separate building site until approved by the existing planning agency with platting authority over the area. Until such approval is obtained, this parcel shall be used in conjunction with the parcel recorded in Volume 537, page 357 and Volume 512, Page 455, Deed Records, Fairfield County, Ohio.
Last Ref.: Volume 598, Page 743, Deed Records, Fairfield County, Ohio.
Parcel# 004-01188-40